NAGEL, Appellee,

v.

HORNER et al., Appellants.

[Cite as *Nagel v. Horner,* 162 Ohio App.3d 221, 2005-Ohio-3574.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 04CA2975.

Decided July 11, 2005.

222

James H. Banks and Nina M. Najjar, for appellee.

Lawrence E. Barbiere, for appellants.

———

HARSHA, Judge.

{¶ 1} Using R.C. 2744.02(C),[1] Charles H. Horner, the Portsmouth Police Department, and the city of Portsmouth, Ohio, appeal the trial court's judgment denying them sovereign immunity on Steven E. Nagel's retaliation and hostile-work-environment claims. R.C. 2744.09 provides that sovereign immunity does not apply to claims arising out of the employment relationship. Regardless of whether they can be classified as intentional torts, retaliation and hostile-work-environment claims are causally connected to the employment relationship and thus arise out of it. Therefore, the trial court correctly determined that appellants were not entitled to statutory immunity on those two claims. Appellants raise two additional arguments, neither of which concerns the trial court's

---

1. R.C. 2744.02(C) provides: "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

decision that they are not entitled to sovereign-immunity.[2] Our review under R.C. 2744.02(C) is limited to the sovereign-immunity issue. Because the order they appeal from is not otherwise final, we lack jurisdiction to consider these other arguments. Therefore, we affirm the court's judgment.

{¶ 2} The underlying facts remain disputed. Appellants terminated Nagel's employment for reasons that they claim were justified. Nagel contends otherwise and alleges that appellants wrongfully terminated him because he refused to participate in appellants' alleged attempts to discredit another law-enforcement officer. Thus, Nagel filed a complaint against appellants that contained various claims for relief, including retaliation and hostile-work-environment claims. Appellants moved for summary judgment, arguing that they were entitled to sovereign immunity on all claims. The trial court determined that appellants were entitled to summary judgment and granted them immunity on all claims except for retaliation and creating a hostile work environment.

{¶ 3} Appellants appealed from the denial of immunity and assign the following errors:

## FIRST ASSIGNMENT OF ERROR

The trial court erred in determining defendants were not entitled to statutory immunity on any state claims for retaliation and hostile work environment.

## SECOND ASSIGNMENT OF ERROR

The trial court erred in determining that the city of Portsmouth was not entitled to summary judgment on plaintiff's federal claims for retaliation and hostile work environment.

## THIRD ASSIGNMENT OF ERROR

The trial court erred in proceeding with plaintiff's claims where his administrative remedies under the collective bargaining agreement had not yet been exhausted.

## I. Constitutionality of R.C. 2744.02

■ {¶ 4} Before we address the merits of appellants' first assignment of error, we consider Nagel's argument that we lack jurisdiction. He claims that

---

**2.** Appellants contend that the trial court should have granted them summary judgment on the retaliation and hostile-work-environment claims because Nagel failed to exhaust his administrative remedies and because he did not present sufficient evidence to establish his claims. They further argue that the trial court should have stayed the proceedings pending arbitration.

R.C. 2744.02 is unconstitutional based upon *Kammeyer v. Sharonville* (S.D.Ohio 2003), 311 F.Supp.2d 653, and *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554. Nagel also argues that, assuming we do have jurisdiction, we are limited to reviewing the trial court's decision that appellants are not entitled to sovereign immunity. We agree with this latter proposition, but reject the former.

{¶ 5} In *Butler*, the court held:

1. Within the meaning of R.C. 2744.02(B)(5), R.C. 5104.11 does not expressly impose liability on a political subdivision for failure to inspect or for the negligent certification of a type-B family day-care home even where the political subdivision has completely ignored the obligations imposed upon it by the statute.

2. Within the meaning of R.C. 2744.02(B)(5), no other section of the Revised Code expressly imposes liability on a political subdivision for failure to inspect or for the negligent certification of a type-B family day-care home.

Id. at paragraphs one and two of the syllabus. *Butler* was decided on July 25, 2001, when the Supreme Court Rules for Reporting of Opinions provided that the syllabus of Supreme Court opinions stated the controlling law. See former S.Ct.Rep. 1 R.1(B), 3 Ohio St.3d xxi, which was replaced by the current version, effective May 1, 2002. Nowhere in the syllabus did the Ohio Supreme Court declare R.C. 2744.02 unconstitutional. Instead, a plurality of the court discussed reasons why R.C. 2744.02 *might* be unconstitutional. This discussion is pure dicta, and *Butler* falls short of declaring R.C. 2744.02 unconstitutional.

{¶ 6} However, based upon *Butler*, *Kammeyer* predicted that the Ohio Supreme Court would declare R.C. 2744.02 unconstitutional. *Kammeyer* concluded that "the Ohio Supreme Court has provided more than adequate direction for the Court to conclude that the invocation of sovereign immunity by the City and the individual Defendants violates the Plaintiffs' rights to trial by jury and to remedy under the Ohio Constitution." Thus, it found R.C. Chapter 2744 unconstitutional.

■ {¶ 7} We choose not to follow *Kammeyer* because it is not controlling authority. See *State v. Steele*, Butler App. No. CA2003–11–276, 2005-Ohio-943, 2005 WL 516526, at ¶ 42, citing *State v. Burnett* (2001), 93 Ohio St.3d 419, 422–24, 755 N.E.2d 857 ("the decisions of federal courts constitute persuasive authority only, and are not binding on this court"). *Kammeyer* did not involve a federal constitutional question, but instead involved a federal court deciding whether a state law violated the state constitution. Not being bound by federal district court pronouncements on federal law, we leave the interpretation of state constitutional law to our state's highest court. Moreover, *Kammeyer* does not apply the syllabus law of *Butler*, but instead expands the plurality's dicta. See *Thompson v. Bagley*, Paulding App. No. 11–04–12, 2005-Ohio-1921, 2005 WL

940872, at ¶ 19 ("we will not declare a statute unconstitutional based upon the legal reasoning of a plurality of the Supreme Court that was stated in dicta").

{¶ 8} Finally, we have already rejected the proposition that *Butler* is a proper vehicle for finding R.C. Chapter 2744 unconstitutional. See *Ratcliff v. Darby* (Dec. 2, 2002), Scioto App. No. 02CA2832, 2002-Ohio-6626, 2002 WL 31721942, at ¶ 23–25. We see nothing in Nagel's argument that causes us to reconsider our previous holding.

## II. Immunity under R.C. Chapter 2744

{¶ 9} In their first assignment of error, appellants assert that the trial court erroneously denied their summary judgment motion regarding the retaliation and hostile-work-environment claims because they are entitled to statutory immunity under R.C. Chapter 2744.

### A. Nagel's Failure to File a Cross–Appeal

{¶ 10} While Nagel asserts that the trial court properly determined that appellants were not entitled to statutory immunity, he also seems to argue that the trial court erred by determining that appellants were entitled to sovereign immunity on his other claims. Because Nagel did not file a cross-appeal and because this argument seeks to change the trial court's judgment, we cannot address it. See App.R. 3(C)(1) ("A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4").

### B. Summary Judgment Standard of Review

{¶ 11} When we review a trial court's summary judgment decision, we conduct a de novo review that independently applies the requirements of Civ.R. 56(C). *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when (1) no genuine issue of material fact remains for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence against it construed most strongly in its favor. Civ.R. 56(C) and *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; see, also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352. The burden of showing that no genuine issue exists as to any

material fact falls upon the moving party. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, " 'the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 12} Because the determination whether a political subdivision is immune from liability is a question of law, summary judgment is an appropriate vehicle for that determination. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862.

## C. Statutory–Immunity Analysis

{¶ 13} While many opinions begin with the now familiar three-tiered analysis of *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556, 733 N.E.2d 1141, the most logical beginning for our political-subdivision-immunity analysis is R.C. 2744.09, which removes certain actions from the purview of R.C. Chapter 2744. It states:

This chapter does not apply to, and shall not be construed to apply to, the following:

(A) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;

(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to *any matter that arises out of the employment relationship* between the employee and the political subdivision;

(C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment;

(D) Civil actions by sureties, and the rights of sureties, under fidelity or surety bonds;

(E) *Civil claims based upon alleged violations of the constitution or statutes of the United States*, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions.

(Emphasis added.)

{¶ 14} On their face, Nagel's retaliation and hostile-work-environment claims are based upon his employment relationship and upon what he claims is his exercise of free speech. Thus, under R.C. 2744.09(B) and (E), it would appear

that any immunity provided by R.C. Chapter 2744 is not available to the appellants.

{¶ 15} Nonetheless, appellants contend that Nagel's claims represent intentional torts, for which political subdivisions retain their immunity. Appellants rely upon *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 757, 118 S.Ct. 2257, 141 L.Ed.2d 633, to argue that discrimination claims, like those that Nagel raises, are employer intentional torts. However, they read *Burlington* too broadly. That case stated: "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." However, *Burlington* never went so far as to say that discrimination claims "do not arise out of the employment relationship" between the employee and the political subdivision.

{¶ 16} We acknowledge that Ohio courts consistently have held that under the provisions of R.C. Chapter 2744, political subdivisions retain their cloak of immunity from lawsuits for intentional-tort claims. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450 at 452, 639 N.E.2d 105, where in a suit by a private citizen the court stated that R.C. 2744.02(B) contains no exceptions to immunity for torts of fraud and intentional infliction of emotional distress. We also acknowledge that in the workers' compensation context, the Supreme Court of Ohio has held that an employer's intentional tort against an employee occurs outside the scope of the employment relationship. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. Consequently, Ohio appellate courts have held that R.C. 2744.09 has no application to employer-intentional-tort claims. See *Thayer v. W. Carrollton Bd. of Edn.*, Montgomery App. No. 20063, 2004-Ohio-3921, 2004 WL 1662198; *Terry v. Ottawa Co. Bd. of Mental Retardation & Developmental Disabilities* (2002), 151 Ohio App.3d 234, 783 N.E.2d 959; and *Chase v. Brooklyn City School Dist.* (2001), 141 Ohio App.3d 9, 749 N.E.2d 798, and the cases they cite.

{¶ 17} But in *Gessner v. Union*, 159 Ohio App.3d 43, 2004-Ohio-5770, 823 N.E.2d 1, the Second District held that age-discrimination and wrongful-discharge claims arose out of the employment relationship, despite the defendant's claim that age discrimination is an intentional tort. In reaching its decision, the court noted that "[t]he case law on this issue is sparse, but that is not surprising in view of such an obvious point." Id. at ¶ 31. *Gessner* further observed that no other Ohio cases precluded applying R.C. 2744.09(B) when civil rights violations occur in the employment context. "In fact, suit appears to be routinely permitted against political subdivisions in such situations." Id. at ¶ 47.

{¶ 18} Like our colleagues in *Gessner*, we are not persuaded that the legislature intended to engraft the Supreme Court's interpretation of the workers' compensation scheme onto its general statutory provisions for political-subdivision immunity. Because employer intentional torts are not a natural risk of

employment, the Supreme Court concluded that they occur outside of the employment relationship in the workers' compensation context. See *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 613, 433 N.E.2d 572. However, as we noted in *Penn Traffic Co. v. AIU Ins. Co.* (Sept. 10, 2001), Pike App. No. 00CA653, 2001 WL 1085242, an employer's intentional tort arises out of and happens in the course of employment, even if the conduct can be characterized as outside of the normal employment relationship. Subsequently, the Supreme Court of Ohio affirmed our characterization of employer intentional torts in that matter. See *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199. While the case dealt with the interpretation of exclusions found in commercial insurance policies, the Supreme Court's conclusion is instructive. The court stated:

> [A]n injury that is the product of an employer's intentional tort is one that also "arises out of and in the course of" employment.
>
> * * * Although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise there can be no employer intentional tort.

Id. at ¶ 39–40.

{¶ 19} We continue to believe claims that are causally connected to an individual's employment fit into the category of actions that are "relative to any matter that arises out of the employment relationship." See, also, *Marcum v. Rice* (July 20, 1999), Franklin App. Nos. 98AP717, 98AP718, 98AP719, and 98AP721, 1999 WL 513813, unreported, where the Tenth District interpreted R.C. 2744.09 as precluding immunity for the city of Columbus in an employee's suit for defamation and intentional infliction of emotional distress. See, also, the dissent in *Coolidge v. Riegle*, Hancock App. No. 5–02–59, 2004-Ohio-347, 2004 WL 170319, stressing the causal-relationship aspect when interpreting the statute. The contention that the principle behind political-subdivision immunity, i.e., the integrity of the public fisc, should override the legislature's express directive that immunity does not apply to claims causally connected to the employment relationship seems dubious. Obviously, the legislature was aware that it was leaving the treasury unguarded when it enacted R.C. 2744.09 in 1985. Just one year earlier, the Supreme Court of Ohio reinstated a jury verdict of liability against a public employer in an employee's intentional-tort case in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046 (companion case No. 84–339, *Gains v. Painesville*). More recently, the Supreme Court of Ohio went so far as to summarily state that immunity is not available to a political subdivision in an employee's claim for unlawful discrimination. The court cited R.C. 2744.09(B) and (C). *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d

120, 123, 656 N.E.2d 684. And while *Wilson v. Stark Cty. Dept. of Human Services*, supra, does indeed indicate that R.C. 2744.02(B) has no exceptions to immunity for fraud and intentional infliction of emotional distress, that case involved a suit by a citizen who was not a public employee. Thus, R.C. 2744.09(B) was not applicable.

{¶ 20} Because they are causally connected to Nagel's employment with the appellants, the retaliation and hostile-work-environment claims arise out of the employment relationship and in this case are based upon what Nagel asserts are violations of his civil rights. Therefore, his claims fall within the purview of R.C. 2744.09, which means that the statutory grant of immunity found in R.C. Chapter 2744 does not apply. Thus, we conclude that the trial court correctly decided that appellants are not entitled to summary judgment on these claims.

### III. Nonimmunity Issues

{¶ 21} We cannot consider appellants' remaining arguments, because R.C. 2744.02(C) limits our jurisdiction to deciding whether the trial court erroneously determined that appellants were not entitled to sovereign immunity. We cannot decide whether the merits of the action otherwise warrant summary judgment. Because R.C. 2744.02(C) does not provide us with jurisdiction to consider issues other than the trial court's sovereign-immunity decision and because the order being appealed is not otherwise final, we lack jurisdiction to consider appellants' other two assignments of error.

{¶ 22} Consequently, we affirm the trial court's judgment.

Judgment affirmed.

ABELE, P.J., and KLINE, J., concur.