[Cite as *Scott v. Kashmiry*, 2015-Ohio-3902.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Darnetta Scott et al., | : | |
| Plaintiffs-Appellants, | : | No. 15AP-139 |
| | | (C.P.C. No. 13CV-11901) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Kareem Kashmiry et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 24, 2015

*Schiff & Associates Co., LPA, Terry V. Hummel*, and *Emily Valandingham*, for appellants.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Andrew D. M. Miller*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, Darnetta Scott, individually, and as parent and legal guardian of Dashona Leftwich and Chelsie Mobley; Muriel Slack, as parent and legal guardian of Zeannah Slack; and Marquisa Goodgame, as parent and legal guardian of Kaniqua Goodgame, appeal from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendants-appellees, Kareem Kashmiry and City of Columbus. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This case involves a motor vehicle accident that occurred shortly after midnight on October 29, 2011 at the intersection of Minnesota Avenue and Bremen Street

("the intersection") in Columbus.[1]  The intersection is in a residential neighborhood. Darnetta Scott was travelling east on Minnesota Avenue, a one-way street.  Her passengers were Dashona Leftwich, Chelsie Mobley, Zeannah Slack, and Kaniqua Goodgame.  Kashmiry, a police officer with the Columbus Division of Police, was driving his police cruiser north on Bremen Street, a two-way street.  At the intersection, there is no stop sign for the traffic on Minnesota Avenue, but there is a stop sign for the drivers on Bremen Street.  There are trees, shrubs, and other vegetation at the southwest corner of the intersection.

{¶ 3}  Officer Kashmiry approached the intersection and came to a stop at the stop sign.  After coming to a stop, Officer Kashmiry checked his on-board computer to get information regarding his dispatch run.  Officer Kashmiry then entered the intersection and, immediately after doing so, his cruiser was struck by Scott.

{¶ 4}  On October 29, 2013, appellants filed their complaint asserting a claim of negligence against Officer Kashmiry and claims of negligent entrustment and respondeat superior against the city.  Appellees filed an answer on February 18, 2014 asserting they are immune from these claims under R.C. Chapter 2744.  On December 8, 2014, appellees filed a motion for summary judgment asserting that both the city and Officer Kashmiry are immune from liability.

{¶ 5}  In support of their motion for summary judgment, appellees attached an affidavit from Officer Kashmiry in which Officer Kashmiry averred he is familiar with the intersection because it is within the territory he covers as a patrol officer.  Officer Kashmiry described the intersection as "well-paved, sparsely populated, and lit by artificial lighting."  (Kashmiry Affidavit, ¶ 10.)  Based on his experience patrolling the area, Officer Kashmiry stated "there is usually little or no traffic at that intersection at this time at night."  (Kashmiry Affidavit, ¶ 19.)  According to his affidavit, Officer Kashmiry stopped at the stop sign, looked both east and west for oncoming traffic even though Minnesota is a one-way street, and, because he "did not see any oncoming traffic," entered

---

[1] The record provided to this court contains several references to the collision occurring on October 29, 2011 as well as a reference to the collision occurring on October 21, 2011. The parties do not dispute that there is only one automobile accident at issue here, and any error in the date of the collision contained in the record is akin to a clerical error.

the intersection. (Kashmiry Affidavit, ¶ 25.) Officer Kashmiry further averred that the overgrown vegetation "obscured [his] view of any eastbound Minnesota traffic that may have been approaching from the west." (Kashmiry Affidavit, ¶ 21.) Officer Kashmiry stated that "[a]lthough, in retrospect, [he] could have pulled into the intersection more slowly than [he] did in light of [his] obstructed view," he did not intend to cause an accident or cause any harm. (Kashmiry Affidavit, ¶ 29.) Additionally, Officer Kashmiry stated "both the time of night and the unlikelihood of oncoming traffic made the probability of any accident or harm to others very low." (Kashmiry Affidavit, ¶ 29.) Officer Kashmiry also noted he was "in a relative hurry to respond to a disturbance call," but that he "did not enter the intersection with any design, intention, or desire to do injury or harm to anyone." (Kashmiry Affidavit, ¶ 30-31.)

{¶ 6} Scott stated in her deposition that she did not see Officer Kashmiry's police cruiser until "[r]ight before [they] collided." (Scott Deposition, 20.) Mobley did not see the police cruiser until just before the collision. Slack did not see the cruiser until "either at the point of impact or immediately after." (Slack Deposition, 16.) Neither Leftwich nor Goodgame saw the police cruiser until after the collision had already occurred.

{¶ 7} Appellants responded to the motion for summary judgment in a January 12, 2015 memorandum in opposition, arguing there exists a genuine issue of fact as to whether Officer Kashmiry's conduct was wanton or reckless. Appellees filed a reply in support of their motion for summary judgment on January 13, 2015.

{¶ 8} In a January 28, 2015 decision and entry, the trial court granted appellees' motion for summary judgment, concluding appellants could not establish that their claims against the city fit into the statutory exception to political subdivision immunity. The trial court similarly concluded that appellants could not demonstrate that their claim against Officer Kashmiry fell into the statutory exception for a police officer's operation of his police cruiser. The trial court, therefore, dismissed appellants' complaint with prejudice. Appellants timely appeal.

## II. Assignment of Error

{¶ 9} Appellants assign the following error for our review:

> The trial court erred in granting [defendants'] motion for summary judgment.

## III. Standard of Review and Applicable Law

{¶ 10} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 11} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. Discussion

{¶ 12} In their sole assignment of error, appellants argue the trial court erred in granting appellees' motion for summary judgment. More specifically, appellants assert there remain genuine issues of material fact as to whether the city and Officer Kashmiry are immune from liability. We consider separately the city's immunity and Officer Kashmiry's immunity.

### A. The City's Immunity

{¶ 13} Appellants first argue the trial court erred in determining the city is immune from liability.

{¶ 14} "Whether a political subdivision is immune from civil liability is purely a question of law, properly determined prior to trial and preferably on a motion for summary judgment." *Yonkings v. Piwinski*, 10th Dist. No. 11AP-07, 2011-Ohio-6232, ¶ 18, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992). To determine whether a political subdivision is entitled to immunity pursuant to R.C. Chapter 2744, a court must engage in a three-tiered analysis. *Id.*, citing *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 10, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). First, the court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with a governmental or proprietary function. R.C. 2744.02(A)(1); *Hubbard* at ¶ 10. If an entity is entitled to immunity under the first tier, the court then moves to the second tier of the analysis and determines whether any of the five exceptions to immunity enumerated in R.C. 2744.02(B) apply. *Id.* at ¶ 12. If any of those exceptions are applicable, the court determines whether the political subdivision can reinstate immunity under the third tier by demonstrating one of the defenses to liability set forth in R.C. 2744.03 applies. *Yonkings* at ¶ 18, citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 12.

{¶ 15} The parties do not dispute that, as a political subdivision performing a governmental function, the city qualifies for immunity under R.C. 2744.02(A)(1). Instead, appellants argue the trial court erred in finding the city immune pursuant to R.C. 2744.02(B)(1)(a), which states:

> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
>
> (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]

Here, there is no dispute that Officer Kashmiry is an employee of the city and was acting within the scope of his employment. Further, the parties do not dispute that Officer

Kashmiry was operating a motor vehicle while responding to an emergency call. However, appellants argue the trial court erred in granting summary judgment on the city's immunity because there remain genuine issues of material fact as to whether Officer Kashmiry's operation of his police cruiser constituted wanton or willful misconduct.

{¶ 16} The Supreme Court of Ohio recently explained the different degrees of care that the General Assembly requires of a political subdivision or an employee of political subdivision in order to impose liability. In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, the Supreme Court noted that "a political subdivision has a full defense to liability when the conduct involved is not willful or wanton, and therefore, if the conduct is only reckless, the political subdivision has a full defense to liability." *Id.* at ¶ 23. Additionally, the Supreme Court clarified that "[t]he terms 'willful,' 'wanton,' and 'reckless' as used in [the political subdivision liability] statutes are not interchangeable." *Id.* at ¶ 40.

{¶ 17} Willful misconduct, as defined by the Supreme Court, "implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Id.* at ¶ 32, citing *Tighe v. Diamond*, 149 Ohio St. 520, 527 (1948). Wanton misconduct "is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at ¶ 33, citing *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-18 (1977). Lastly, reckless conduct is "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-05 (1990).

{¶ 18} The trial court concluded that appellants did not show that Officer Kashmiry's operation of his police cruiser constituted willful or wanton misconduct. We agree. The undisputed facts provided to the trial court demonstrate that Officer Kashmiry came to a complete stop at the stop sign, looked both ways, and, believing he saw no oncoming traffic, proceeded into the intersection. We agree with the trial court that this was the appropriate conduct for Officer Kashmiry at the time, and he did not fail to exercise "any care" as the definition of wanton misconduct requires. Moreover, appellants

do not point to any Civ.R. 56 materials demonstrating or even suggesting that Officer Kashmiry committed willful misconduct when he entered the intersection. Appellants cite no authority suggesting Officer Kashmiry's undisputed conduct in stopping at the stop sign, looking both ways for oncoming traffic, and entering the intersection only after believing he saw no oncoming traffic amounts to an "intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury," as the definition of willful misconduct requires. *Id.* at ¶ 32. We further agree with the trial court that the facts provided to the trial court demonstrate that Officer Kashmiry's conduct was negligent at worst, and therefore does not rise to the level of willful or wanton misconduct as required to subject the city to liability.

{¶ 19} Although the underlying facts are not in dispute, appellants nonetheless argue that, given Officer Kashmiry's admitted familiarity with the area, Officer Kashmiry should have taken more care at the intersection and anticipated that another vehicle might be approaching the intersection. Appellants provide no legal authority for the imposition of a heightened duty based on Officer Kashmiry's familiarity with the area, and, as the trial court noted, even if there was such a heightened duty, Officer Kashmiry's failure to heed caution still rises only to the level of negligence. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor," and "[s]uch perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." (Internal quotations omitted.) *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37. Appellants make no such allegations of Officer Kashmiry having a disposition to perversity. Further, Officer Kashmiry's statement in his affidavit that he pulled into the intersection believing there was no oncoming traffic contradicts any possibility that Officer Kashmiry was "conscious that his conduct will in all probability result in injury." *Id.*

{¶ 20} Appellants rely on this court's decision in *Hunter v. Columbus*, 139 Ohio App.3d 962 (10th Dist.2000) for the proposition that "the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the

surrounding circumstances when reasonable minds might differ as to the import of the evidence."  *Id.* at 970.  However, as the quoted language indicates, this issue should be submitted to a jury only when reasonable minds might differ.  Here, we find that reasonable minds could only conclude that Officer Kashmiry's conduct was, at worst, negligent, and, thus, the issue of immunity is an appropriate issue for resolution on summary judgment. *See Yonkings* at ¶ 18.

{¶ 21} Though *Hunter* cautions against using too "simplistic" of an analysis when considering whether the actor used "any care," *Hunter* is distinguishable from the present case.  The "simplistic analysis" rejected by this court in *Hunter* was the proposition that operating an emergency vehicle with lights and sirens running was sufficient to satisfy the "any care" requirement.  *Hunter* at 970.  In *Hunter*, the emergency vehicle had lights and sirens running but still went left of center while traveling 26 m.p.h. above the speed limit.  As this court explicitly noted, "[g]oing left of center alone is dangerous under any circumstances, but the danger is greatly reduced if the speed is slow."  *Id.*  Thus, the probability of harm created by the operator of the fire truck was much greater in those circumstances, so the finding of "any care" required more than just lights and sirens.  We were careful to note in *Hunter* that "[e]ach situation like this must be evaluated on its own facts," and that "the circumstances are extreme enough that evaluation of whether the recklessness was great enough to be willful or wanton misconduct is a matter for the trier of fact."  *Id.* at 971.

{¶ 22} Here, the circumstances are not "extreme enough" to create a genuine issue of fact as to whether Officer Kashmiry's operation of his police cruiser constituted willful or wanton misconduct.  The trial court noted that the material facts were not in dispute and that this accident occurred in a residential neighborhood, Officer Kashmiry made a complete stop at the intersection, looked both ways for traffic even though it was a one-way street, and, only after believing he did not see any oncoming traffic, proceeded into the intersection.  Under these circumstances, reasonable minds could only conclude that Officer Kashmiry did not fail to exercise any care and that the probability of harm was quite low.  Thus, reasonable minds could only conclude that Officer Kashmiry's conduct was not willful or wanton.

{¶ 23} After a complete review of the record, appellants do not point to any Civ.R. 56 materials that would create a genuine issue of material fact as to whether Officer Kashmiry acted willfully or wantonly in the operation of his police cruiser. Thus, the city is entitled to immunity under R.C. Chapter 2744, and the trial court did not err in granting appellees' motion for summary judgment as to the claims against the city.

**B. Officer Kashmiry's Immunity**

{¶ 24} We must next determine whether the trial court erred in determining that Officer Kashmiry is entitled to immunity on these claims.

{¶ 25} "The three-tiered analysis regarding the potential liability of a political subdivision 'does not apply when determining whether an employee of the political subdivision will be liable for harm caused to an individual.' " *Stevens v. Maxson*, 10th Dist. No. 12AP-672, 2013-Ohio-5792, ¶ 12, quoting *Mashburn v. Dutcher*, 5th Dist. No. 12 CAE 010003, 2012-Ohio-6283, ¶ 33, citing *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 17. Rather, R.C. 2744.03(A)(6) sets forth the immunity of employees of political subdivisions and the exceptions thereto. *Id.* As relevant here, R.C. 2744.03(A)(6)(b) provides immunity for a political subdivision employee who acts within the scope of his or her duties unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 26} Appellants do not allege that Officer Kashmiry acted with malicious purpose or in bad faith. Thus, in order for appellants' claims against Officer Kashmiry to proceed, appellants must demonstrate that Officer Kashmiry's conduct was more than mere negligence. *See Hayes v. Columbus*, 10th Dist. No. 13AP-695, 2014-Ohio-2076, ¶ 26 (noting "[r]eckless conduct * * * is substantially greater than negligent conduct"). As explained above, the undisputed facts contained in the Civ.R. 56 materials demonstrate that Officer Kashmiry's conduct was, at worst, negligent. Reckless conduct, as defined above, requires "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at ¶ 34. The Civ.R. 56 materials provided to the court in support of the motion for summary judgment demonstrate that, due to the time of night and the intersection's location in a residential area, the risk of harm was quite low. Even given this low risk, Officer Kashmiry did not act with conscious disregard or

indifference to the risk of harm to another, but took care to stop at the stop sign and look both ways for traffic before proceeding. Appellants do not explain how this conduct amounts to reckless conduct. Because appellants cannot demonstrate that their claims against Officer Kashmiry fit into the exception to immunity contained in R.C. 2744.03(A)(6)(b), the trial court did not err in granting summary judgment to appellees with respect to those claims.

{¶ 27} After a complete review of the record, we find that appellants cannot demonstrate there remain any genuine issues of material fact with respect to either their claims against the city or against Officer Kashmiry, and we agree with the trial court that appellants' claims fail to meet the statutory exceptions to immunity. Accordingly, the trial court did not err in granting appellees' motion for summary judgment, and we overrule appellants' sole assignment of error.

## V. Disposition

{¶ 28} Based on the forgoing reasons, the trial court did not err in granting appellees' motion for summary judgment. Having overruled appellants' sole assignment of error, we affirm the decision and entry of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

————————————