[Cite as *Brown v. Cincinnati*, 2020-Ohio-5418.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

TERRY BROWN,                            :        APPEAL NO. C-200031
                                                 TRIAL NO. A-1900301
    Plaintiff-Appellee,           :

                                        :        *O P I N I O N.*

  vs.                                   :

                                        :

CITY OF CINCINNATI,                     :

    Defendant-Appellant.          :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Dismissed in Part, Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: November 25, 2020


*Terry Brown*, pro se,

*Paula Boggs Muething*, City Solicitor, and *Mark R. Manning*, Assistant City Solicitor*,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} In this replevin and conversion action with a somewhat messy procedural backdrop, appellant-defendant city of Cincinnati asks us to reverse the denial of summary judgment to it, largely based on immunity. We agree in part. The city's effort to secure summary judgment on all claims is premature, as the trial court has not concluded the case, and thus we lack appellate jurisdiction to entertain the merits of this dispute. But the court was wrong to deny the city immunity on the conversion claim, *in part*, because the city secured some of the property in question pursuant to a governmental function, and no exception to immunity applies. The same cannot be said, however, for the replevin claim, which only seeks the return of the property and not damages. Therefore, we dismiss this appeal in part, affirm in part, and reverse in part, and remand for further proceedings.

I.

{¶2} Plaintiff-appellee Terry Brown was charged with domestic terrorism in 2016, after allegedly issuing threats to the Hamilton County Prosecutor's Office and the Cincinnati Police Department. As part of the investigation, police executed a search warrant at Mr. Brown's house, seizing approximately 20 items that were ostensibly related to the case. These include a revolver and ammunition, several computers, electronic devices, USB drives, and other miscellaneous items. He was arrested two days later.

{¶3} The criminal matter against Mr. Brown proceeded to trial and, after an initial mistrial, he was acquitted at his encore trial in 2018. Eager to reclaim his property after his victory, Mr. Brown sued the city for replevin (or in the alternative, conversion) of 30–35 items of personal property that he alleges police seized. The police department has a record of approximately 20 of those items, but Mr. Brown insists that the city possesses 10–15 additional items, including a wallet, MP3 player, and clothing. Finally, Mr. Brown also

brought claims for damage to two vehicles—alleging that the city crushed a 1998 Mazda and caused unspecified damage to a 1997 Oldsmobile. It is undisputed that the city attempted to return the items identified in its records to Mr. Brown on several occasions. Mr. Brown, however, has refused to accept those items until the conclusion of the entire case.

{¶4} In response to Mr. Brown's suit, the city moved for summary judgment, which the trial court granted in part and denied in part. The court granted summary judgment for the city on the issues relating to the two vehicles (those are not before us in this appeal). However, the trial court denied the city's motion as to the personal items. In so concluding, the court expressed concern about a discrepancy between the search warrant report (Exhibit D) and the inventory report (Exhibit A). In short, the inventory report contains a few more items than the search warrant report. The court noted that this discrepancy could result from officers grouping items together on the handwritten search warrant report, with the inventory report spelling out the items in more detail. Additionally, the court noted that a couple of items not listed on the search warrant report might have been taken during the arrest instead of during the search. Regardless, because the court could not ascertain the origin of the discrepancy, it determined that summary judgment was inappropriate "as to these items." However, the court failed to elucidate whether "these items" include all 30–35 personal items that Mr. Brown disputes or whether it encompasses only the items that reflect the discrepancy highlighted by the court. Finally, the trial court denied the city's defenses, including the defense of immunity. The city now appeals on the basis of the denial of tort immunity, under R.C. 2744.02(C).

II.

{¶5} In its sole assignment of error, the city argues that the trial court erred by not granting its summary judgment motion in full. The city primarily argues that it should

]prevail on the merits, and presents its immunity argument from both of Mr. Brown's claims (replevin and conversion) in the alternative. However, the city faces a jurisdictional hurdle which limits the scope of our appellate review. We first address that jurisdictional limitation, and then we discuss the city's alternative immunity argument.

A.

{¶6} Contrary to the city's argument, we do not have appellate jurisdiction to review the merits in this case. The Ohio Constitution provides that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review * * * final orders of the courts of record inferior to the court of appeals * * * ." Article IV, Section 3(B)(2). Thus, "[i]f an ogrder is not final, [] an appellate court has no jurisdiction." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). And as a general rule, "the denial of summary judgment is not a final, appealable order." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, as relevant here, the General Assembly carved out an exception for certain immunity rulings: "An order that denies a political subdivision * * * the benefit of an alleged immunity from liability * * * is a final order." R.C. 2744.02(C).

{¶7} But this exception does not throw open the door to all interlocutory matters: "appellate review under R.C. 2744.02(C) is limited to the denial of immunity." *Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810, ¶ 43 (4th Dist.); *Bonkoski v. Lorain Cty.*, 2018-Ohio-2540, 115 N.E.3d 859, ¶ 12 (9th Dist.) ("An appeal taken under R.C. 2744.02(C), however, is limited to the issue of immunity."). And this limitation precludes us from reaching the merits of this case at this time. *See State ex rel. Deem v. Village of Pomeroy*, 4th Dist. Meigs No. 17CA3, 2017-Ohio-2937, ¶ 9 ("[A]ppellate review under R.C. 2744.02(C) * * * does not authorize the appellate court to review the merits of the action.");

4

*Nagel v. Horner*, 162 Ohio App.3d 221, 2005-Ohio-3574, 833 N.E.2d 300, ¶ 21 (4th Dist.) ("We cannot decide whether the merits of the action otherwise warrant summary judgment[] [b]ecause R.C. 2744.02(C) does not provide us with jurisdiction * * * .").

{¶8}    Therefore, to the extent the city invites us to determine the underlying merits of this case, we find its appeal premature and dismiss that aspect of its appeal for want of appellate jurisdiction.  We can only review the issue of immunity at this juncture.

B.

{¶9}    With the scope of this appeal narrowed, we now consider whether immunity applies to Mr. Brown's claims—replevin and conversion—and to the property in dispute. "[I]ssues regarding political-subdivision immunity under R.C. Chapter 2744 present questions of law, 'properly determined prior to trial and preferably on a motion for summary judgment.' " *Stanfield v. Reading Bd. of Edn.*, 2018-Ohio-405, 106 N.E.3d 197, ¶ 5 (1st Dist.), quoting *Scott v. Kashmiry*, 2015-Ohio-3902, 42 N.E.3d 339, ¶ 14 (10th Dist.). And of course, we review summary judgment determinations de novo.  *Basinger v. Pilarczyk*, 137 Ohio App.3d 325, 327, 738 N.E.2d 814 (1st Dist.2000).  Thus, our inquiry is limited to whether the evidence, when viewed in Mr. Brown's favor, permits only one reasonable conclusion: that the city enjoys immunity from his claims.  *See Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-180284, 2019-Ohio-5208, ¶ 28.

{¶10}    When determining whether the city should receive immunity, we follow a three-tiered analysis.  *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 8 (1st Dist.), citing *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10.  First, we assess whether the underlying conduct falls within the general grant of immunity in R.C. 2744.02(A)(1) for damages caused pursuant to a governmental or proprietary function.  *Id.*  Second, if the underlying conduct does fall

within the general grant of immunity, we then inquire whether any exception in R.C. 2744.02(B) applies. *Id.* And finally, if an exception applies, we assess whether any of the statutory defenses in R.C. 2744.03 nonetheless preclude liability. *Id.* For simplicity's sake, we apply this analysis to each claim—replevin and conversion—in turn.

1.

**{¶11}** The city cannot survive the first tier of analysis on Mr. Brown's replevin claim because the claim sits outside of the general grant of immunity in R.C. 2744.02(A)(1). The immunity statute represents the codification of the Political Subdivision Tort Liability Act. *Pavlik v. Cleveland*, 8th Dist. Cuyahoga No. 92176, 2009-Ohio-3073, ¶ 12. And the general grant of immunity provides that "a political subdivision is not liable in *damages* * * * ." (Emphasis added.) R.C. 2744.02(A)(1). Thus, immunity under R.C. Chapter 2744 is limited to damages in tort. *Barton v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 105008, 2017-Ohio-7171, ¶ 25 ("By its very language and title, R.C. Chapter 2744 applies only to tort actions for damages. * * * Immunity under R.C. Chapter 2744 is therefore not a defense for claims involving declaratory judgment or injunctive relief."). In contrast, replevin is " 'an action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who has wrongfully distrained or taken or who wrongfully detains such goods or chattels.' " *Davis v. Springfield Police Dept.*, 2d Dist. Clark No. 2003-CA-44, 2004-Ohio-1164, ¶ 11, quoting *Black's Law Dictionary* 1299 (6th ed.1990); *see State, Dept. of Nat. Resources, Div. of Wildlife v. Prescott*, 42 Ohio St.3d 65,

67, 537 N.E.2d 204 (1989) ("A writ of replevin * * * is a remedy sought in a civil action contesting the right to possession of personal property.").[1]

{¶12} The city features three cases from our sister districts in an effort to convince us that immunity nonetheless applies to replevin. But this argument mischaracterizes the holdings of those cases. First, in *Davis v. Springfield Police Dept.*, 2d Dist. Clark No. 2003-CA-44, 2004-Ohio-1164, while the plaintiff filed a complaint, in replevin, seeking damages for emotional distress after police seized his property, the Second District clarified, in affirming tort immunity for the police, that the plaintiff's claim was not actually for replevin. *Id.* at ¶ 1, 11. As the court explained, because "[the plaintiff] does not seek the return of his property, but rather seeks monetary damages for emotional distress * * * * his action is not truly an action for replevin, it is an action sounding in tort." *Id.* at ¶ 11. Second, in *Pavlik v. Cleveland*, 8th Dist. Cuyahoga No. 92176, 2009-Ohio-3073, police impounded and sold a motorcycle when the registered owner failed to reclaim it. *Id.* at ¶ 6. The true owner of the motorcycle filed a replevin claim, seeking its return or its fair market value. *Id.* at ¶ 7. Although the Eighth District determined that immunity protected the city, as a practical matter, the court's conclusion could only apply to the alternative claim for damages because the motorcycle was not returnable (thus rendering replevin moot). *See* R.C. 2737.14 ("If

---

[1] Although the issue is not before us, we recognize that replevin claims may also include incidental monetary damages. *See* R.C. 2737.14; *State, Dept. of Nat. Resources, Div. of Wildlife v. Prescott*, 42 Ohio St.3d 65, 67, 537 N.E.2d 204 (1989) ("Where the action is for the purpose of regaining possession of the property it is an action *in rem*, and when damages are sought to assuage wrongful detention the action is *in personam*."), citing *Jedlicka v. Good Mechanical Auto Co.*, 21 Ohio App.3d 19, 21, 486 N.E.2d 121 (8th Dist. 1984) ("Replevin is a remedy and a civil action by which the owner or one who has a general or special interest in specific and identifiable personal property and the right to its immediate possession seeks to recover the possession of such property in specie, the recovery of damages, if it is sought, being only incidental."), quoting 18 Ohio Jurisprudence 3d, 536–37, (1980) Conversion and Replevin, Section 66; *but see* R.C. 2737.14 ("If delivery of the property cannot be made, the action may proceed as a claim for conversion upon due notice * * * .").

delivery of the property cannot be made, the action may proceed as a claim for conversion upon due notice * * * ."). Importantly, the court crystalized this very distinction by noting that, had it still possessed the motorcycle, the city would have been obligated under R.C. 2933.41 to return it. *Id.* at ¶ 26. In other words, immunity would not have shielded the city from performing its statutory duty to return the motorcycle. *Id.* Finally, in *Studer v. Seneca Cty. Humane Soc.*, 3d Dist. Seneca No. 13-99-59, 2000 WL 566738 (May 4, 2000), the plaintiff sued a county's humane society after it confiscated a large number of malnourished animals from the plaintiff's property, euthanizing most of them and adopting out the remaining few. *Id.* at *1. The plaintiff brought a few claims, including a replevin and conversion claim, and the trial court granted summary judgment for the humane society, based in part on immunity. *Id.* at *1, *2. But in affirming the trial court on the immunity issue, the Third District clarified that "the trial court properly granted summary judgment on the basis of immunity with respect to the tort claim, namely conversion * * * ." *Id.* at *4. Furthermore, the court remanded the replevin claim for further proceedings, while noting that the replevin claim would have to proceed against the new owners. *Id.* at *6 ("[A]n action in replevin may only be asserted against those 'having, at the time the suit is begun, actual or constructive possession and control of the property.' "), quoting *Black v. City of Cleveland*, 58 Ohio App.2d 29, 32, 387 N.E.2d 1388 (8th Dist.1978). In sum, nothing about these cases suggests that immunity should apply to replevin.

{¶13} In light of the plain language of the statute, and Ohio caselaw, we decline to extend tort immunity under R.C. Chapter 2744 to the replevin claims presented by Mr. Brown, so far as they seek the repossession of property. Such claims seeking the return of property do not constitute an action for *damages*, as provided by the statute. *See* R.C. 2744.02(A)(1). And, indeed, the city's theory would present a troubling result—the city

8

could seize property from its citizens and wrap itself in immunity to avoid ever returning it. We therefore affirm the trial court's decision to deny summary judgment on the city's immunity defense with respect to the replevin claim presented by Mr. Brown.

2.

{¶14} Having determined that immunity does not apply to the replevin claim, we now turn to Mr. Brown's conversion claim. For analytical ease, we assess the conversion claim by dividing the property into two categories: (1) Listed Property—property listed in the search warrant report (Exhibit D) and inventory report (Exhibit A); and (2) Unlisted Property—property not listed in either report.

{¶15} *Listed Property.* We conclude that the city has immunity from any conversion claim relating to the Listed Property because the evidence establishes that it was seized pursuant to a governmental function. As already noted, R.C. 2744.02(A)(1) excludes political subdivisions from tort liability for "governmental functions," which includes "[t]he provision or nonprovision of police * * * services." R.C. 2744.01(C)(2)(a). Additionally, Ohio courts have held that when police seize property in connection with the execution of a warrant, the seizure constitutes a governmental function. *Davis*, 2d Dist. Clark No. 2003-CA-44, 2004-Ohio-1164, at ¶ 12 ("[E]xecuting a search warrant is acting in connection with a governmental function."); *Pavlik*, 8th Dist. Cuyahoga No. 92176, 2009-Ohio-3073, at ¶ 23 ("[W]e find that police actions of seizing, impounding, and auctioning the motorcycle were governmental functions * * * ."). Here, the evidence points in only one direction. The city submitted two affidavits, from Jenny Schrage (the property room manager) and Matthew Martin (a specialist who assisted with the search warrant), establishing that it took the Listed Property pursuant to a search warrant. In contrast, Mr. Brown tendered no evidence suggesting that the Listed Property was *not* taken pursuant to a police function. While he

9

highlights the discrepancy between the search warrant report (Exhibit D) and the inventory report (Exhibit A), he fails to generate a material dispute of fact whether the city seized this property in the course of undertaking police services. Neither does Mr. Brown show why the city was required to file a copy of the search warrant—the law only requires a showing that it was taken pursuant to a governmental function (which the city established by affidavit). R.C. 2744.02(A)(1). Finally, Mr. Brown's affidavit does not provide any evidence contradicting the city's evidence in this respect. In fact, his complaint appears to concede that these items were taken at the time of the execution of the arrest and search warrants. Thus, when viewing the evidence in a light most favorable to Mr. Brown, a reasonable jury could only conclude that the Listed Property was taken pursuant to a governmental function.

{¶16} Having concluded that the Listed Property falls within the general grant of immunity, we next consider whether any exception applies. And Mr. Brown has not demonstrated that any such exception exists. Subsection (B) of R.C. 2744.02 provides some exceptions to immunity: (1) negligent operation of a motor vehicle; (2) negligent conduct relating to proprietary functions; (3) negligent maintenance of roads; (4) negligent conduct causing injury on government buildings or grounds; and (5) any express exceptions otherwise provided by law. None of the specific exceptions apply to this case based on our record, nor has Mr. Brown identified any other statutory provision imposing liability on the city in this context. We thus conclude that the city has immunity from Mr. Brown's conversion claim against the Listed Property.

{¶17} *Unlisted Property.* Finally, we conclude that the city did not establish summary judgment entitlement to immunity for conversion of the Unlisted Property (items not reflected in the city's reports, Exhibits A and D). The Ohio Supreme Court explains that

10

"a party seeking summary judgment * * * bears the initial burden of informing the trial court of the basis for the motion * * * ." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Thus, to obtain summary judgment regarding the Unlisted Property, the city must "specifically point to some evidence * * * which affirmatively demonstrates that [Mr. Brown] has no evidence to support [his] claims." *Id.* Here, the city simply argues that it never possessed the Unlisted Property in the first place. The city may well be correct. But as we have already noted, the merits of this case exceed the scope of our appellate review at this juncture. *State ex rel. Deem*, 4th Dist. Meigs No. 17CA3, 2017-Ohio-2937, at ¶ 9. We are only concerned with whether the Unlisted Property (if seized) was taken pursuant to a governmental function. And viewing the evidence in a light most favorable to Mr. Brown, the city's affidavits demonstrate only that it took the *Listed Property* pursuant to the search warrant. Thus, if the city does in fact possess the *Unlisted Property* (as Mr. Brown insists), the city failed to establish at summary judgment that it did so pursuant to a governmental function.

\*     \*     \*

{¶18}  In light of the foregoing analysis, we conclude that the trial court erred by not granting summary judgment for the city on the conversion claim against the Listed Property (items on Exhibit A and Exhibit D). However, we affirm the trial court's denial of summary judgment on the city's immunity claim for conversion against the Unlisted Property (items not listed on Exhibit A and Exhibit D). Furthermore, we affirm the trial court's denial of summary judgment regarding immunity as to Mr. Brown's replevin claim against all items. Finally, because the trial court ruled in the city's favor (and on the merits) regarding the two vehicles, we do not review that determination and dismiss the city's appeal with respect to

11

the merits for want of appellate jurisdiction. We therefore sustain in part, overrule in part the city's assignment of error, and dismiss in part the city's appeal and remand this cause for further proceedings consistent with this opinion.

Judgment accordingly.

**MYERS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion

12