[Cite as *Winbush v. Cincinnati Music Festival*, 2022-Ohio-2799.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JACQUELINE WINBUSH, | : | APPEAL NO. C-210652<br>TRIAL NO. A-2101883 |
| Plaintiff-Appellant, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| CINCINNATI MUSIC FESTIVAL, et al., | : | |
| Defendants, | : | |
| and | | |
| CITY OF CINCINNATI, | : | |
| CINCINNATI PARK BOARD AND URBAN FORESTRY, | : | |
| and | : | |
| CINCINNATI BOARD OF PARK COMMISSIONERS, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 12, 2022

*Harvey A. Richman*, for Plaintiff-Appellant,

*Andrew W. Garth*, City Solicitor, *Scott M. Heenan* and *Kevin M. Tidd*, Assistant City Solicitors, for Defendants-Appellees.

**MYERS, Presiding Judge.**

{¶1} Plaintiff-appellant Jacqueline Winbush appeals the trial court's entry granting a motion to dismiss filed by defendants-appellees the city of Cincinnati, the Cincinnati Park Board and Urban Forestry, and the Cincinnati Board of Park Commissioners (collectively referred to as "the city defendants"). In a single assignment of error, Winbush challenges the trial court's determination that the city was entitled to immunity from liability. Finding Winbush's argument to be without merit, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2} Winbush suffered serious injury after falling in a hole in a sidewalk in downtown Cincinnati. She filed a complaint against multiple defendants, including, as relevant to this appeal, the city defendants, seeking to recover for her injuries. Winbush's complaint alleged that she fell into the hole while walking on a sidewalk on Elm Street near Paul Brown Stadium, where she planned to attend an event called The Cincinnati Music Festival. Winbush alleged that she was unable to see the hole because of the dense crowd of people who were also on their way to the music festival.

{¶3} The complaint alleged that the hole into which Winbush fell had been intended for the placement of a tree but was empty at the time of her fall. Whereas similar holes in the city's sidewalks contained two steel gratings placed to form a circle around the tree, the two gratings on the treeless hole at issue were reversed, resulting in two semicircular holes in the ground.

{¶4} While the complaint contained nine causes of action asserted against the various defendants, only two causes of action concerned the city defendants. The second cause of action pertained only to the city. In it, Winbush asserted that the city

maintained responsibility and control over the sidewalk area where she fell, and that "[t]he decoration of an area adjacent [to] a sidewalk with planted trees was a negligent performance of acts by employees [and] was a proprietary function and an exception to any claim of immunity (Ohio Revised Code 2744.02(B)(2))." It further alleged that the city negligently failed to erect a barrier or place a sign around the hole, that the city was negligent for having created a "trap" in the sidewalk, and that it was reasonably foreseeable that someone could fall into the hole and suffer injury. Winbush asserted that the city acted negligently, willfully, wantonly, recklessly, and with deliberate indifference to those using the sidewalk, and that it was not immune from liability.

{¶5} The sixth cause of action was brought against all city defendants. It contained allegations similar to those asserted in the second cause of action. It additionally asserted that the Park Board had the direct responsibility to maintain and assure the safety of the area in which trees were planted in gratings along the sidewalk, and that the Park Board negligently failed to carry out its responsibilities.

{¶6} The city defendants filed a Civ.R. 12(B)(6) motion to dismiss. They argued that the trial court should dismiss the Park Board and the Board of Park Commissioners from the action because they are departments of the city and not independent municipal corporations, and as such they cannot be sued. The city defendants additionally argued that the city should be dismissed from the action because it was immune from Winbush's claims under R.C. Chapter 2744. Winbush opposed the motion to dismiss. The trial court issued an entry granting the motion to dismiss. The entry stated that the court had reviewed the parties' arguments and found the city defendants' motion to be well taken.

{¶7} Winbush has appealed. In a single assignment of error, she argues that the trial court erred in granting the motion to dismiss because it was a jury question as to whether the city was entitled to immunity. Winbush only challenges the trial court's determination that the city was immune from liability and does not challenge its determination that the remaining city defendants were departments of the city and could not be sued.

### *Standard of Review*

{¶8} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Plush v. Cincinnati*, 2020-Ohio-6713, 164 N.E.3d 1056, ¶ 12 (1st Dist.). A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted tests the sufficiency of the complaint. *Thomas v. Othman*, 2017-Ohio-8449, 99 N.E.3d 1189, ¶ 18 (1st Dist.). When ruling on such a motion, the trial court is confined to the allegations in the complaint, must accept all the allegations as true, and must draw all reasonable inferences in favor of the nonmoving party. *Plush* at ¶ 12. A Civ.R. 12(B)(6) motion to dismiss should only be granted if it "appear[s] beyond a doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.*, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶9} A motion to dismiss may be granted on the basis of an affirmative defense, such as immunity, "only where the complaint bears 'conclusive evidence that the action is barred by the defense.' " *Id.* at ¶ 13, quoting *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, ¶ 9.

5

### *City is Immune From Liability*

**{¶10}** R.C. Chapter 2744 establishes a three-tiered analysis to determine whether a political subdivision, such as the city, is entitled to immunity. *Brown v. Cincinnati*, 2020-Ohio-5418, 162 N.E.3d 1274, ¶ 10 (1st Dist.). Under the first tier, we determine "whether the underlying conduct falls within the general grant of immunity in R.C. 2744.02(A)(1) for damages caused pursuant to a governmental or proprietary function." *Id.* The second tier of the analysis requires us to determine whether, if the underlying conduct falls within the general grant of immunity, any exception set forth in R.C. 2744.02(B) applies to remove that grant of immunity. *Id.* And, if an exception applies, the third tier of the analysis requires us to determine whether any of the defenses set forth in R.C. 2744.03 reinstate immunity. *Id.*

**{¶11}** Applying this analysis, we must first determine whether the city's underlying conduct, as alleged by Winbush, falls within the general grant of immunity in R.C. 2744.02(A)(1). This section provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). R.C. 2744.01(C)(1) provides that a governmental function is:

> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
>
> (b) A function that is for the common good of all citizens of the state;
>
> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not

customarily engaged in by nongovernmental persons; and that is not

specified in division (G)(2) of this section as a proprietary function.

Specific examples of governmental functions are set forth in R.C. 2744.01(C)(2). A proprietary function, on the other hand, is one that is not described as a governmental function in R.C. 2744.01(C)(1)(a) or (b) or specified as a governmental function in (C)(2), and "is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1).

{¶12} Winbush suffered injury when she fell in a hole on the sidewalk that had been intended for the placement of a tree. With respect to the city's underlying conduct that caused this injury, Winbush's complaint can be read to allege that the city failed to maintain the sidewalk area containing the hole and/or that the city failed to properly carry out its tree-maintenance responsibilities on city grounds. The city is entitled to an initial grant of immunity under R.C. 2744.02(A)(1) because, as explained below, both types of underlying conduct asserted by Winbush involve a governmental function.

{¶13} R.C. 2744.01(C)(2)(e) provides that "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, *sidewalks*, bridges, aqueducts, viaducts, and public grounds" is a governmental function. (Emphasis added.) Because the maintenance and repair of sidewalks is a governmental function, the city is therefore immune from liability for its failure to maintain the condition of the sidewalk or to repair the hole in the sidewalk. *See State v. Evans*, 1st Dist. Hamilton No. C-120726, 2013-Ohio-2063, ¶ 13 (city entitled to immunity on plaintiff's allegations that it was negligent in its maintenance and repair

of a sidewalk and in its regulation of the use of a sidewalk based on its failure to keep a sidewalk free from a jagged, cut-off signpost); *Georgantonis v. City of Reading*, 2020-Ohio-3961, 156 N.E.3d 1037, ¶ 20 (1st Dist.) (where plaintiff's complaint alleged that injury was caused by a defect in the sidewalk surface, the city was entitled to immunity on plaintiff's claims because the allegations related to the city's maintenance of the sidewalk, which was a governmental function);*Williams v. Cincinnati*, 1st Dist. Hamilton No. C-210146, 2021-Ohio-3801, ¶ 6.

{¶14} And if we consider the city's conduct to be the failure to properly carry out its tree-maintenance responsibilities, rather than its failure to maintain the condition of the sidewalk, we reach the same conclusion—that the city was engaged in a governmental function pursuant to R.C. 2744.01(C)(2)(e). This court was confronted with a similar argument in *Scroggs v. Cincinnati*, 2022-Ohio-598, 185 N.E.3d 674 (1st Dist.). In *Scroggs*, the plaintiff was injured while walking in a tree lawn when she fell in a hole created by a tree removal. Scroggs sued the city, alleging that it was liable for its employees' negligent failure to fill or cover the hole. *Id.* at ¶ 2. The city filed a motion to dismiss, arguing that it was immune from liability. The trial court converted the motion to dismiss into a motion for summary judgment, and it denied the motion. *Id.* at ¶ 3-4. On appeal, this court reversed. We held that the city was entitled to immunity, stating that:

> We find that acts or omissions of a political subdivision's employee involving tree maintenance occurring on public grounds—both removing the tree and filling in the remaining hole—is maintenance and repair of public grounds. *See Seikel v. City of Akron*, [191 Ohio App.3d 362,] 2010-Ohio-5983, 946 N.E.2d 250, ¶ 17, 19 (9th Dist.). Therefore,

8

under R.C. 2744[.01](C)(2)(e), tree maintenance on public grounds is a governmental function.

*Id*. at ¶ 16.

{¶15} Pursuant to R.C. 2744.01(C)(2)(e), the city's acts or omissions as alleged by Winbush involving either the maintenance and repair of sidewalks or tree maintenance on public grounds, were both governmental functions. The city was thus entitled to a general grant of immunity pursuant to R.C. 2744.02(A)(1).

{¶16} We now turn to the second tier of the analysis and consider whether any of the exceptions set forth in R.C. 2744.02(B) apply to remove that grant of immunity. On the facts of this case, involving a hole on a city sidewalk that had been intended for the placement of a tree, we find that none of the exceptions set forth in R.C. 2744.02(B) apply to remove the city's immunity.

{¶17} A majority of the exceptions clearly are inapplicable and necessitate no further analysis. Winbush's injury was not caused by the negligent operation of a motor vehicle by a city employee, thus rendering inapplicable the exception contained in R.C. 2744.02(B)(1). And as Winbush's injury occurred when she fell in a hole on the sidewalk, and was not caused by the city's failure to keep public roads in repair or to remove obstructions from public roads, the exception set forth in R.C. 2744.02(B)(3) is likewise inapplicable. Nor is it arguable that Winbush's injury was caused by the negligence of a city employee that occurred within or on the grounds of, and due to physical defects within or on the grounds of, a building used in connection with the performance of a governmental function. *See* R.C. 2744.02(B)(4). And because civil liability was not expressly imposed on the city under a section of the Revised Code, Winbush cannot rely on the exception set forth in R.C. 2744.02(B)(5).

{¶18} We discuss in more detail the exception set forth in R.C. 2744.02(B)(2), which provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." By its plain language, this exception only applies if the employee of the political subdivision was engaged in a proprietary function. But here, as we have explained, the city's actions involving either the maintenance and repair of sidewalks or tree maintenance on public grounds were both governmental functions. *See* R.C. 2744.01(C)(2)(e) (a governmental function includes "the regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds"). As such, the exception set forth in R.C. 2744.02(B)(2) is inapplicable.

{¶19} Winbush contends that the city lost its grant of immunity because it acted wantonly and recklessly when creating the hazardous condition that caused her injury. She argues that "R.C. 2744.02(B)(1)(b) provides a political subdivision with a full defense to liability for injuries…. if its operation does <u>not</u> constitute willful or wanton misconduct." Winbush's argument concerning R.C. 2744.02(B)(1) is misplaced. This exception only applies to remove a political subdivision's immunity when the plaintiff's injury was caused "by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." As Winbush's injury was indisputably not caused by a city employee's negligent operation of a motor vehicle, this section is clearly inapplicable. While R.C. 2744.02(B)(1)(b) provides that immunity may be reinstated to a political subdivision if the actions of its employee in operating the motor vehicle

10

did not constitute willful or wanton misconduct, such a willful-or-wanton-misconduct analysis only comes into play if the exception to immunity applies in the first place. And in this case, it does not.

{¶20} Further relying on her complaint's allegation that the city acted wantonly and recklessly, Winbush additionally argues that "R.C. 2744.03(A)(6)(b) provides immunity to employees of a political subdivision for acts that are not committed in a wanton or reckless manner. The City lost its immunity due to its reckless act." Winbush is again mistaken in her interpretation of the immunity provisions in R.C. Chapter 2744, as she is ostensibly interchanging the immunity of a political subdivision employee with the immunity of the political subdivision itself. R.C. 2744.03(A)(6)(b) provides that an employee of a political subdivision is immune from liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." This provision plainly provides that an employee's immunity is removed if the employee acts in a wanton or reckless manner. But the statute has no bearing on the immunity granted to the political subdivision itself, and it cannot be used to remove the grant of immunity accorded to the city under R.C. 2744.02(A)(1). *See Sudnik v. Crimi*, 117 Ohio App.3d 394, 398, 690 N.E.2d 925 (8th Dist. 1996) ("[b]y its very terms, subsection (A)(6) [of R.C. 2744.03] applies only to individual employees and not to political subdivisions and, therefore, has no effect on the alleged liability of the city"); *Jones v. City of Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶ 37 (the analysis set forth in R.C. 2744.02 applies when the defendant is a political subdivision, whereas the analysis set forth in R.C. 2744.03(A)(6) applies when the defendant is an employee of a political subdivision).

**{¶21}** Having found that no exception applies to remove the city's grant of immunity, we need not proceed to the third tier of our analysis. Because the alleged conduct of the city that caused Winbush's injury was done in connection with a governmental function, the city was entitled to general immunity under R.C. 2744.02(A)(1). The trial court, consequently, did not err in granting the city defendants' motion to dismiss.

**{¶22}** Winbush's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.