[Cite as *Glick Mgt., L.L.C. v. Cincinnati*, 2025-Ohio-2572.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| GLICK MANAGEMENT, LLC, d.b.a. TRI-STATE AUTO SALES, | : | APPEAL NO. | C-240652 |
| | | TRIAL NO. | A-2403523 |
| | : | | |
| Plaintiff-Appellant, | | | |
| | : | | |
| vs. | | *JUDGMENT ENTRY* | |
| | : | | |
| CITY OF CINCINNATI, | | | |
| | : | | |
| Defendant-Appellee. | | | |
| | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% each to appellant and appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 7/23/2025 per order of the court.**

**By:**_____
          **Administrative Judge**

[Cite as *Glick Mgt., L.L.C. v. Cincinnati*, 2025-Ohio-2572.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| GLICK MANAGEMENT, LLC, d.b.a. TRI-STATE AUTO SALES, | : | APPEAL NO. | C-240652 |
|  |  | TRIAL NO. | A-2403523 |
| Plaintiff-Appellant, | : |  |  |
|  | : |  |  |
| vs. | : | *O P I N I O N* |  |
|  | : |  |  |
| CITY OF CINCINNATI, | : |  |  |
| Defendant-Appellee. | : |  |  |
|  | : |  |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 23, 2025

*Worth Law, LLC*, and *Matthew J. Worth*, for Plaintiff-Appellant,

*Emily Smart Woerner*, City Solicitor, and *Katherine C. Baron* and *Matthew J. Slovin*, Senior Assistant City Solicitors, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1} Plaintiff-appellant Glick Management, LLC, d.b.a. Tri-State Auto Sales ("Tri-State") held a lien on a vehicle seized by defendant-appellee City of Cincinnati. Tri-State alleges that the city disposed of that vehicle without providing Tri-State the notice required by law. Nevertheless, the trial court held that the city was immune and dismissed the complaint. We are now asked to determine whether that grant of immunity was proper.

{¶2} Upon review, we hold that the city was immune from one of Tri-State's claims, but that its immunity defense to the remaining three likely depends upon what authority the city exercised when it towed the vehicle—a question not resolved by the face of Tri-State's complaint. We therefore affirm the trial court's judgment as to the one claim, reverse its judgment as to the others, and remand the cause for further proceedings.

## I. BACKGROUND

{¶3} According to its complaint, plaintiff-appellant Tri-State sold a 2014 Honda CRV ("the vehicle") to a buyer in 2021 on a "Retail Installment Contract" that granted Tri-State a security interest in the vehicle. Tri-State thus held a lien on the vehicle. Sometime around May 2023, Tri-State sought to repossess the vehicle because the buyer had breached the installment contract. When Tri-State finally got in touch with the buyer at the end of June, the buyer informed Tri-State that the vehicle "had been seized by the Cincinnati Police Department and placed in the Spring Grove Police Impound Lot," and had "been sold" earlier that month.

{¶4} Tri-State's complaint alleged that Tri-State had received no notice that the vehicle had been impounded, nor that it was to be sold. When Tri-State called the police department, Tri-State was allegedly told "that the certified letter required under

Ohio Law was never sent to" Tri-State. The department told Tri-State to file a claim form "to recoup its losses." Tri-State did so, and, after hearing nothing back for multiple months, called the department again. On this second call, Tri-State was told that there was nothing the department could do and "was advised to retain counsel."

{¶5} Tri-State then filed suit against the city in the Hamilton County Court of Common Pleas, bringing claims for (I) violations of R.C. 4513.611, (II) violations of R.C. 4513.61, (III) conversion, and (IV) unjust enrichment. Tri-State's complaint sought statutory and treble damages under R.C. 4513.611, compensatory damages for the conversion of the vehicle, restitution in the amount the city was unjustly enriched, punitive damages, costs, and attorneys' fees.

{¶6} The city responded by filing a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). In it, the city argued that it was statutorily immune from all claims, that Tri-State "[did] not have standing" to assert claims under R.C. 4513.611, and that R.C. 4513.61 did not create a "private right of action." Although Tri-State's allegations did "cause the Court some concern," the trial court nevertheless granted the city's motion, holding that "a reasonable and legally appropriate application of [R.C. Ch. 2744], at least in this case, entitles [the city] to immunity."

{¶7} This appeal timely followed.

## II. ASSIGNMENTS OF ERROR 1-3: STATUTORY CLAIMS

{¶8} Tri-State's first three assignments of error are as follows:

**First Assignment of Error:** The trial court erred in granting the city's motion to dismiss under Civ. R. 12(B)(6), on the sole basis of political subdivision immunity.

**Second Assignment of Error:** The trial court erred as a

matter of law in holding that none of the exceptions of R.C. § 2744.02(B) apply, and therefore erred in granting the city's motion to dismiss.

**Third Assignment of Error:** The trial court erred by improperly characterizing the city's actions as a "governmental function", and therefore erred in granting the city's motion to dismiss on the basis of political subdivision immunity.[1]

Tri-State's fourth assignment of error makes clear that these first three address Counts I and II of the complaint. Because the first three assignments of error concern the trial court's dismissal of these counts based on political-subdivision immunity, we address them together.

### A. Civ.R. 12(B)(6) & Political-Subdivision Immunity

**{¶9}** We review dismissals under Civ.R. 12(B)(6) de novo. *Plush v. City of Cincinnati*, 2020-Ohio-6713, ¶ 12 (1st Dist.); *Schmitz v. NCAA*, 2018-Ohio-4391, ¶ 10.

**{¶10}** The Ohio Rules of Civil Procedure require only notice pleading. *See Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 2021-Ohio-4096, ¶ 10. Because a plaintiff need not "prove his or her case at the pleading stage," a court should grant a motion to dismiss only if it appears ""beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."" *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145 (1991), quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975); *accord Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 8.

**{¶11}** In this case, the trial court dismissed the complaint not because of any

---

[1] We have normalized the capitalization of all quotations to Tri-State's assignments of error, which appeared in all capital letters in its brief.

5

deficiency in Tri-State's causes of action, but based on the city's affirmative defense of political-subdivision immunity under R.C. Ch. 2744.

{¶12} Tri-State contends that the trial court's "application of political subdivision immunity was premature at the pleadings stage" and that it improperly "prevent[ed] the parties from conducting any meaningful discovery." As many courts have recognized, "[a]ffirmative defenses are difficult to raise successfully in a Civ.R. 12(B)(6) motion." *Veller v. K.B.*, 2025-Ohio-687, ¶ 28 (6th Dist.); *accord Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, ¶ 21 (10th Dist.); *Schmitz*, 2018-Ohio-4391, at ¶ 41 (Kennedy, J., concurring). But "difficult" is not "impossible."

{¶13} Tri-State acknowledges that our cases permit a trial court to "grant a motion to dismiss on the basis of an affirmative defense, such as immunity, . . . where the complaint bears 'conclusive evidence that the action is barred by the defense.'" *See Plush*, 2020-Ohio-6713, at ¶ 13 (1st Dist.), quoting *Bucey v. Carlisle*, 2010-Ohio-2262, ¶ 9 (1st Dist.). Tri-State simply contends that the dismissal of *its* complaint was premature and therefore improper.

{¶14} Dismissal under Civ.R. 12(B)(6) is proper only if the complaint itself is insufficient. A court considering a dismissal based on an affirmative defense, therefore, "must exercise caution" and recognize that the plaintiff "need not anticipate and attempt to plead around defenses." (Cleaned up.) *Cristino* at ¶ 21. So long as a complaint (1) states a claim in a manner sufficient to place the defendant on notice of the conduct at issue and (2) does not obviously or conclusively establish that the subdivision would be immune, it should stand. *See Plush* at ¶ 13.

{¶15} While the first prong is governed by the substantive requirements of the plaintiff's cause of action, the second is governed by the three-tiered immunity analysis set forth in R.C. Ch. 2744. *See Winbush v. Cincinnati Music Festival*,

2022-Ohio-2799, ¶ 10 (1st Dist.); *Greene Cty. Agricultural Soc. v. Liming*, 2000-Ohio-486, ¶ 25. As applied to a motion to dismiss, those three tiers proceed as follows.

**{¶16}** *First*, we ask whether the face of the complaint discloses that the defendant, the action, and the underlying conduct all fall within the text of R.C. 2744.02(A)(1). *See Winbush* at ¶ 10. If so, the defendant subdivision is presumptively immune. *See id.* at ¶ 10, 11; *Liming* at ¶ 25.

**{¶17}** *Second*, because the immunity extended by R.C. 2744.02(A)(1) is presumptive, not absolute, we ask whether, consistent with the allegations in the complaint, one of the exceptions in R.C. 2744.02(B) might rescind that immunity. *Winbush* at ¶ 10, 16; *Liming* at ¶ 25.

**{¶18}** *Third*, even if an immunity exception applies, we nevertheless ask whether the plaintiff's complaint demonstrates the applicability of any of the defenses set forth in R.C. 2744.03. *Winbush*, 2022-Ohio-2799, at ¶ 10, 21 (1st Dist.); *Liming*, 2000-Ohio-486, at ¶ 25.

### B. *Removal, Storage & Disposal of Vehicles*

**{¶19}** Counts I and II both sought damages for breaches of statutory duties to notify lienholders before disposing of a stored vehicle. Count I sought damages for notice violations under R.C. 4513.611, while Count II asserted breaches of a duty imposed under R.C. 4513.61. We pause to consider these distinct statutory frameworks.

**{¶20}** *Private Tow-Away Zones.* R.C. 4513.611, the statute cited in Count I of the complaint, allows a "vehicle owner" to "bring a civil action . . . against a towing service or storage facility that commits a major or minor violation" of certain towing-related statutes. As relevant here, R.C. 4513.611(A)(1)(e) defines a "minor

violation" to include a failure to provide an owner or lienholder with the notice required by R.C. 4513.601(F)(2)(a) within five days, and R.C. 4513.611(A)(2)(f) makes failure to provide such notice within 30 days a "major violation."

{¶21} R.C. 4513.601 (the "private-tow-away statute") provides a statutory framework for the removal and storage of vehicles parked in private tow-away zones. Paragraph (A) empowers a private property owner to create "a private tow-away zone" on their property, while subparagraph (B)(1) allows them to engage a towing service to remove vehicles parked in that zone without their consent. The towing service or storage facility that obtains possession of a vehicle removed in this manner must then "send notice to the vehicle owner and any known lienholder," R.C. 4513.601(F)(2), who can attempt to reclaim the vehicle pursuant to R.C. 4513.601(G).

{¶22} *Law-Enforcement Storage.* R.C. 4513.61 (the "law-enforcement-storage statute") is the statute at issue in Count II of the complaint. Under R.C. 4513.61(A), certain law-enforcement officers may "order into storage any motor vehicle" that has either "come into [their] possession . . . as a result of the performance of [their] duties," or been left on public property for a certain length of time. R.C. 4513.61(A)(1) and (2). The law-enforcement-storage statute imposes its own notice requirements, which commands the relevant "sheriff, chief, or department" to "cause a search to be made" of certain databases "to ascertain the identity of the owner and any lienholder" of the stored vehicle and provide them with notice. R.C. 4513.61(C)(1).

{¶23} The law-enforcement-storage statue makes the sending of notice to the owner and lienholders a prerequisite for disposal of the stored vehicle at auction or to a salvage dealer. R.C. 4513.61(D). However, unlike the notice provisions in the private-tow-away statute (R.C. 4513.601(F)(2)), no provision of R.C. 4513.61 or its

8

surrounding statutes empowers private parties to enforce the notice requirements in the law-enforcement-storage statute through private actions.

{¶24} Tri-State's complaint alleged both a breach of the duty to provide notice under R.C. 4513.601 *and* the duty to provide notice under R.C. 4513.61. Because these duties apply to entirely different scenarios, these claims operate in the alternative, and we consider them separately.

### C. Claim under R.C. 4513.611

{¶25} Count I of Tri-State's complaint sought relief under R.C. 4513.611(B). The only notice violations remediable under that statute are based on violations of the notice requirement imposed under the private-tow-away statute. Thus, Tri-State can only recover under its first count if the city (A) breached a duty to provide notice under the private-tow-away statute and (B) is not entitled to immunity.

{¶26} The duty to notify imposed under R.C. 4513.601(F) arises only "[w]hen a vehicle is removed from private property in accordance with this section," R.C. 4513.601(F)(1), i.e., when a towing service removes a vehicle from a private tow-away zone at the property owner's request. Thus, if the city acted as a towing service to remove the vehicle from a private tow-away zone, then it had to provide notice in accordance with R.C. 4513.601(F). If it failed to do so, then R.C. 4513.611(B) would likely furnish Tri-State with a cause of action.

{¶27} Tri-State's complaint in this case did not allege why or from where the vehicle was removed, only that it was "seized by the Cincinnati Police Department and placed in the Spring Grove Police Impound Lot." However, the complaint *did* allege that the vehicle was seized and possessed by the city, who sold it without providing Tri-State with notice required under R.C. 4513.601(F)(2). Accordingly, we hold that, drawing all inferences in favor of Tri-State, the complaint alleged facts that could

furnish Tri-State with a cause of action against the city under R.C. 4513.611(B). If Tri-State can prove that city towed the vehicle from a private tow-away zone pursuant to R.C. 4513.601, stored it, and failed to provide notice, then Tri-State would likely be entitled to recover under R.C. 4513.611, absent immunity.

{¶28} The complaint adequately put the city "on notice of the claims against them" under R.C. 4513.611(B). *See Maternal Grandmother*, 2021-Ohio-4096, at ¶ 15. We therefore consider whether the complaint demonstrated that the city was immune from liability for that claim.

1.

{¶29} First, we consider whether the complaint clearly indicated that the city is entitled to presumptive immunity on Count I. The city is unambiguously a political subdivision within the meaning of R.C. Ch. 2744. And Tri-State's suit clearly seeks to hold the city "liable in damages in a civil action for . . . loss to . . . property allegedly caused by any act or omission of the political subdivision." R.C. 2744.02(A)(1).

{¶30} But to warrant immunity, the "act or omission of the political subdivision" alleged to have caused the plaintiff's harm must have been "in connection with a governmental or proprietary function." *Id.*

{¶31} A "governmental function" is one (a) "imposed upon the state as an obligation of sovereignty" and delegated to the subdivision, (b) undertaken "for the common good of all citizens of the state," or (c) that "involve[s] activities that are not engaged in or not customarily engaged in by nongovernmental persons" and that "promote[] and preserve[] the public peace, health, safety, or welfare." R.C. 2744.01(C)(1). A "proprietary function," by contrast, is "a function of a political subdivision" that is not a "governmental function," and "that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are

customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1).

**{¶32}** The removal of a motor vehicle from a private tow-away zone pursuant to R.C. 4513.601 can occur without the involvement of a single municipal actor. Under R.C. 4513.601(A), it is the private property owner who creates the private tow-away zone. Under R.C. 4513.601(B), that owner can initiate the removal of a vehicle parked in one of those zones by contacting a towing company engaged to undertake such tasks pursuant to a contract. *See* R.C. 4513.601(B)(3) ("[n]o towing service shall remove a vehicle from a private tow-away zone except pursuant to a written contract for the removal of vehicles entered into with the owner of the private property"). The towing service may then hold the vehicle itself or deliver it to a storage facility, which also can be private. R.C. 4513.601(B)(1). That same towing service or place of storage is then responsible for identifying and notifying the vehicle's owner and any lienholders. R.C. 4513.601(F)(1) and (2). If notice is given and no one claims the vehicle, then the towing service or storage facility may obtain a certificate of title to the vehicle for itself, in accordance with R.C. 4505.101(B) and (C). *See* R.C. 4513.601(F)(3) and (4).

**{¶33}** This entire scheme is structured to enable private enforcement, with virtually no need for government intervention. If the city removed the vehicle pursuant to R.C. 4513.601, it would have effectively done so as a private contractor, just like any other towing service or storage facility. In other words, it would have engaged in the sort of activity "customarily engaged in by nongovernmental persons" characterizing a proprietary function. *See* R.C. 2744.01(G)(1). The face of the complaint reveals that the omission alleged in Count I, i.e., the failure to provide Tri-State with notice required by R.C. 4513.601(F)(1), occurred "in connection with a . . . proprietary function."

**{¶34}** The city argues that "towing, impounding, and destroying vehicles are

11

governmental functions," not proprietary ones. But the cases that have held as much have concerned towing from public streets or storage of vehicles for law-enforcement purposes. *See Peters v. City of Cincinnati*, 105 Ohio App.3d 710, 712 (1st Dist. 1995) ("[W]e conclude that the procedures of R.C. 4513.63 constitute a governmental function in that it is not customary for nongovernmental persons to order an abandoned vehicle to be towed from a public street, impounded, and subsequently destroyed."); *Parker v. City of Cincinnati*, 2013-Ohio-2192, ¶ 8-9 (1st Dist.) (holding that a city employee, who used law-enforcement authority to impound the vehicle of an individual who "had driven under an administrative license suspension," was engaged in a governmental function). While towing from public streets or storage for law-enforcement purposes may be peculiarly governmental, towing a vehicle left in a private lot pursuant to a contract with the owner is much less so.

{¶35} Accordingly, we hold that towing, storing, and disposing of vehicles removed from private tow-away zones pursuant to R.C. 4513.601 generally constitutes a proprietary function. Tri-State's complaint, taken in the light most favorable to Tri-State, thus suggests the city may have disposed of the vehicle (and failed to provide notice) in connection with a proprietary function, for which the city would be presumptively immune.

2.

{¶36} Next, we consider whether the facts alleged in the complaint are consistent with any of the exceptions to presumptive immunity in R.C. 2744.02(B). One of these exceptions applies when the plaintiff has suffered "injury, death, or loss to person or property" that was "caused by the negligent performance of acts by [the city's] employees with respect to proprietary functions." R.C. 2744.02(B)(2).

{¶37} A failure to provide owners and lienholders with the notice required by

R.C. 4513.601(F)(2) would constitute at least negligence on the part of the city's employees. Because the storage and disposal of vehicles under R.C. 4513.601 could be a proprietary function, we hold that the city's allegedly unlawful conduct, as described in Count I, may fall within R.C. 2744.02(B)(2)'s exception to immunity.

3.

**{¶38}** The city does not argue that any of the defenses in R.C. 2744.03 apply. We therefore conclude that the allegations in Count I of Tri-State's complaint would have been sufficient to survive a motion to dismiss under Civ.R. 12(B)(6) absent the city's assertion of immunity, and that those allegations do not "obviously or conclusively establish" the city would be immune under R.C. 2744.02. The trial court erred in dismissing Count I, and Tri-State's first three assignments of error are sustained to the extent they challenge that dismissal.

### D. Claim under R.C. 4513.61

**{¶39}** Count II of the complaint alleged that the city breached its duty to notify Tri-State before disposing of the vehicle under the law-enforcement-storage statute, R.C. 4513.61.

**{¶40}** As we have noted, R.C. 4513.61 governs the storage and disposal of vehicles that have "come into the possession" of law enforcement officers "as a result of the performance of [their] duties," or been left on public property for a certain length of time. R.C. 4513.61(A)(1) and (2). Just as with Count I, the allegations in Count II were adequate to put the city on notice of Tri-State's claim for breach of its duty to notify under R.C. 4513.61(C)(1).

**{¶41}** But unlike R.C. 4503.601(F)(2), which can be enforced under R.C. 4513.611, the parties cite no statute that provides a private right of action to enforce R.C. 4513.61(C)(1). To enforce the duty to provide notice in R.C. 4513.61(C)(1),

13

therefore, we would be required to exercise our authority to fashion a common-law remedy for the breach of plaintiff's statutory rights. *Compare City of Maple Hts. v. Netflix, Inc.*, 2022-Ohio-4174, ¶ 23. In this case, however, we need not determine whether such a cause of action exists, because, as we explain below, the city would nevertheless be immune from liability.

1.

**{¶42}** As before, there is no debate that the city is a political subdivision or that Tri-State now brings a civil action for damages flowing from the acts or omissions of the city or its agents. The question under the first tier is thus whether those acts or omissions were undertaken "in connection with a governmental or proprietary function."

*a.*

**{¶43}** If the city stored and disposed of the vehicle pursuant to its law-enforcement duties or because it was left on public property under R.C. 4513.61, then the city was performing a governmental function. Removing, storing, and disposing of vehicles left on public property or as part of a duty to enforce the law constitute "activities that are not engaged in or not customarily engaged in by nongovernmental persons" and that "promote[] and preserve[] the public peace, health, safety, or welfare," and are therefore governmental functions. *See* R.C. 2744.01(C)(1). We have already held as much in *Peters*, 105 Ohio App.3d at 711-712 (1st Dist.), and *Parker*, 2013-Ohio-2192, at ¶ 8-9 (1st Dist.).

**{¶44}** Removal and storage proceedings under R.C. 4513.61, unlike those under R.C. 4513.601, must be initiated by a public official. *Compare* R.C. 4513.61(A) (granting power to order into storage to various law-enforcement bodies), *with* R.C. 4513.601(B) (permitting private person to cause removal without law-

enforcement intervention). And the database-search and notice provisions of R.C. 4513.61(C)(1) are likewise directed to "the sheriff, chief, or department," rather than to any "towing service or storage facility from which the vehicle may be recovered," as in R.C. 4513.601(F)(1).

*b.*

**{¶45}** Tri-State accepts that the city generally has "authority to dispose of abandoned vehicles" and to "tow and impound a vehicle." (Cleaned up.) It nevertheless argues, "It is unfathomable, how the City can claim, and the Trial Court could agree, that a political subdivision law enforcement agency improperly obtaining title to a vehicle while skirting around the clear dictates of the law, could qualify as a 'governmental function.'"

**{¶46}** Tri-State is understandably frustrated by the immunity doctrine. Even the trial court, in its dismissal entry, noted that the city's failure to follow the law "cause[d] the Court some concern." Nevertheless, immunity doctrines, whether statutory or judicially crafted, represent policy determinations that the societal benefits of insulating certain defendants from suit outweigh the cruelty such insulation inflicts on those left injured without redress. They *are designed* to permit certain defendants to escape liability, *even though* those defendants have violated a plaintiff's legal rights, and *even though* the law would ordinarily hold them to account.

**{¶47}** Thus, a breach of a statutory duty can absolutely constitute an "act or omission" taken "in connection with a governmental . . . function." R.C. 2744.02(A)(1). Under R.C. 2744.02, our task is not to ask whether a particular action is authorized by statute, but whether the act or omission was "*in connection with* a governmental or proprietary function." In this case, because the process of removing, storing, and disposing of the vehicle pursuant to R.C. 4513.61 would be in service of a governmental

function, the failure to provide notice in the process of doing so—even notice required by law—would constitute an omission in connection with a governmental function.

**{¶48}** The Eighth District's opinions in *Bader v. City of Cleveland*, 1982 Ohio App. LEXIS 12121 (8th Dist. Feb. 18, 1982), and *Swanson v. City of Cleveland*, 2008-Ohio-1254 (8th Dist.), cited by Tri-State, do not suggest a different result. *Bader*, which was decided *prior* to the abolition of common-law subdivision immunity and its replacement by statute, concerned a claim against the city brought by a plaintiff whose vehicle had been stolen and was later recovered and impounded by city police. The city contacted the plaintiff but lost the vehicle before he could pick it up. When the plaintiff sued, the city asserted common-law immunity, arguing that operation of the impound lot was a governmental function. But the court held that, "[a]t some time after each vehicle had been identified and its owner notified, police contact with that vehicle amounted to nothing more than storage." *Bader* at *5. Once "a reasonable time" had passed following the city's identification of the plaintiff, the city had become a mere bailee, as any private lot would have been, and its storage became a proprietary function, rather than a governmental one. *See id.* at *6-7.

**{¶49}** Over two decades later, in *Swanson*, the Eighth District acknowledged *Bader*'s holding that, "while the towing and impounding of suspected stolen vehicles was a governmental function of the police department, the subsequent holding and storage of those vehicles by the police in their impound lot, after notice to the owners, could become a proprietary function." *Swanson* at ¶ 14. But unlike in *Bader*, the court said, the city in *Swanson* had held the vehicle pursuant to a police investigation and disposed of it under a statute specific to law-enforcement seizures. *Id.* at ¶ 15. Thus, in *Swanson*, unlike in *Bader*, the "police actions of seizing, impounding, and destroying [the] car were strictly governmental functions." *Id.*

16

**{¶50}** If the city in this case impounded the vehicle pursuant to R.C. 4513.61, then the facts alleged in the complaint look much more like those of *Swanson* than *Bader*. R.C. 4513.61, like the statute at issue in *Swanson*, is peculiar to law enforcement. And because, unlike in *Bader*, the city never identified Tri-State as a lienholder to give notice, Tri-State could not have made the city its bailee.

**{¶51}** *Parker* tells us that removal and disposal of vehicles pursuant to R.C. 4513.61 constitutes a governmental function. And *Bader*'s exception—to the extent not abrogated by the immunity statute—would be inapposite in this case.

*c.*

**{¶52}** Accordingly, we hold that Tri-State's claim that the city disposed of the vehicle without providing the notice required by R.C. 4513.61(C)(1) is necessarily "a civil action" seeking "damages" for "loss . . . to property allegedly caused by [an] act or omission of [a] political subdivision . . . in connection with a governmental . . . function." *See* R.C. 2744.02(A)(1). The city is therefore entitled to presumptive immunity.

2.

**{¶53}** Tri-State offers two possible exceptions that it claims rebut the city's presumptive immunity: R.C. 2744.02(B)(2) and (B)(5).

**{¶54}** R.C. 2744.02(B)(2), as we have already noted, permits liability for injuries caused by negligent acts performed "with respect to proprietary functions." As we have explained, however, the removal, storage, notice, and disposal of vehicles pursuant to R.C. 4513.61 are acts associated with *governmental* functions. R.C. 2744.02(B)(2) is therefore clearly inapplicable to Count II.

**{¶55}** R.C. 2744.02(B)(5) allows for liability when "expressly imposed upon the political subdivision by a section of the Revised Code." This exception contains a

proviso, however:

> Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

R.C. 2744.02(B)(5).

**{¶56}** Tri-State cites no provision of the Revised Code that "expressly impose[s]" liability for violations of R.C. 4513.61(C)(1) on *anyone*, let alone on subdivisions specifically. Tri-State correctly notes that "the City was required to do all of what is required by R.C. § 4513.61, and failed to do so, in clear violation of the statute." But the immunity statute makes clear that failure to comply with the law *is not enough* to overcome immunity under this section. R.C. 4513.61 undoubtedly "uses the term 'shall' in a provision pertaining to a political subdivision" in order to "impose[] . . . a mandatory duty" upon city officials—but such considerations are precisely what the statute says "shall not be construed" as expressly imposing liability for purposes of R.C. 2744.02(B)(5).

**{¶57}** We therefore hold that, under Tri-State's complaint, neither R.C. 2744.02(B)(2) nor 2744.02(B)(5) apply to rebut the city's presumptive immunity.

3.

**{¶58}** Because (1) the removal, storage, and disposal of a motor vehicle pursuant to R.C. 4513.61 constitute a governmental function, (2) Tri-State seeks damages from the city's acts or omissions associated with that function, and (3)

18

neither of the exceptions to immunity cited by Tri-State apply, we hold that the city was entitled to immunity from liability for the alleged violations of R.C. 4513.61 as a matter of law. The trial court was therefore correct to dismiss Count II, and we overrule Tri-State's first three assignments error to the extent they argue to the contrary.

### III.  ASSIGNMENT OF ERROR 4: CONVERSION & UNJUST ENRICHMENT CLAIMS

{¶59}  Counts III and IV of Tri-State's complaint asserted causes of action for conversion and unjust enrichment, seeking damages and restitution, respectively. In its final assignment of error, Tri-State challenges the trial court's decision to dismiss these claims:

> **Fourth Assignment of Error:** The trial court erred by failing to address Counts III and IV of Tri-State's complaint, and therefore erred in dismissing Tri-State's complaint in its entirety.

As before, we review a decision to grant a motion to dismiss under Civ.R. 12(B)(6) de novo. *Schmitz*, 2018-Ohio-4391, at ¶ 10.

{¶60}  Although Tri-State is correct that the city and the trial court offered no independent analysis regarding its third and fourth counts, this was simply because they were dismissed on the same basis: political-subdivision immunity. We therefore consider whether Tri-State's complaint obviously and conclusively showed that such immunity applied.[2]

---

[2] In this appeal, the parties have not litigated the question of whether R.C. 2744.02(A)(1)'s presumptive immunity is triggered by claims for restitution brought under a theory of unjust enrichment—only whether one of the exceptions to immunity applies. But the threshold question remains open in this district. The immunity statute speaks only of "liab[ility] in damages in a civil action." R.C. 2744.02(A)(1). Accordingly, at least one of our sister districts has held that an "unjust enrichment/restitution claim is an equitable claim of restitution and is therefore not barred" by the immunity statute. *Barrow v. Village of New Miami*, 2018-Ohio-217, ¶ 51 (12th Dist.). While this court has held that the immunity statute "has no application in actions for equitable relief" generally, *see City of Cincinnati v. City of Harrison*, 2014-Ohio-2844, ¶ 30 (1st Dist.), we have not

{¶61} Tri-State asserts that Counts III and IV fit within the exception to any presumptive immunity, because they concern injuries caused by a subdivision's negligent acts in connection with a proprietary function. R.C. 2744.02(B)(2). Both the conversion and unjust-enrichment claims at issue here are based on the city's allegedly unlawful disposal of the vehicle in exchange for money. That disposal is part of the same process of removal, storage, and disposal discussed in relation to Counts I and II, and which we have held may have been *either* governmental or proprietary, depending upon the circumstances. The city's storage and disposal therefore could have been in connection with a proprietary function, if effected under R.C. 4513.601 as discussed under Count I. And the failure to provide the legally-required notice provides a basis from which to infer negligence. Thus, R.C. 2744.02(B)(2) may yet apply.

{¶62} Because Tri-State's complaint does not obviously and conclusively demonstrate that immunity would bar Counts III and IV, we hold that the trial court erred in dismissing those counts based on immunity, and we sustain Tri-State's fourth assignment of error.

## IV. CONCLUSION

{¶63} Because Tri-State's complaint provided "conclusive evidence" that Tri-State's claim seeking damages for breach of R.C. 4513.61 was barred by immunity, the trial court properly dismissed Count II. *See Bucey*, 2010-Ohio-2262, at ¶ 9 (1st Dist.). However, because Tri-State's remaining three counts may fit within an exception to immunity, the trial court erred in dismissing them. Tri-State's first three assignments

---

been called upon to determine whether claims seeking restitution for unjust enrichment fit that mold. For purposes of this appeal, we assume (as the parties have assumed) that R.C. 2744.02(A)(1) applies to Tri-State's unjust-enrichment claim, without expressing any view as to that threshold legal issue.

of error are therefore overruled in part and sustained in part, and Tri-State's fourth assignment of error is sustained.

**{¶64}** Accordingly, we affirm the trial court's judgment dismissing Count II, reverse its judgment dismissing Counts I, III, and IV, and remand the cause for further proceedings consistent with the law and this opinion.

Judgment accordingly.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.